UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,  No. 14-cr-124 (JRT/LIB) (1)

    Plaintiff,

v.  **REPORT AND RECOMMENDATION**

Arlene Jean Duncan,

    Defendant.

This matter comes before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 31]. This case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a pretrial motions hearing on September 3, 2014, regarding the parties' pretrial discovery motions[1] and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 31].

The Court granted the parties' request for additional, post-hearing briefing regarding Defendant's motion to suppress, and the Court took the motion under advisement as of September 29, 2014.

For reasons discussed herein, the Court recommends **DENYING** Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 31].

I.     **BACKGROUND**

Defendant Arlene Jean Duncan ("Defendant") is charged with one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, 1153(a), and

---

[1] The Court addressed the parties' pretrial discovery motions by separate Order, [Docket No. 47].

3559(f)(3). (Indictment [Docket No. 1]).

Defendant moves the Court for an order suppressing any and all physical evidence obtained as a result of the execution of two search warrants issued in connection with the present case.[2] (See [Docket Nos. 31, 48]). Defendant generally argues that the warrants' supporting affidavits do not offer facts sufficient to support a finding of probable cause and were "so deficient that a reasonable police officer could not [have relied] on them in good faith." (Def.'s Mem. [Docket No. 48], at 1). More specifically, Defendant argues that the warrants' supporting affidavits merely *speculate* that a crime had been committed and that evidence of said crime may be found in the contents of Defendant's cell phone. (Id. at 3-4).

## II.   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE, [DOCKET NO. 31]

### A.   Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "An affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573,

---

[2] At the September 3, 2014, motions hearing, Defense counsel specifically clarified and narrowed Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 31], representing that the motion challenges two search warrants issued in the present case, (Gov't Exs. 1, 3), on their four corners.

576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, Gates, 462 U.S. at 238)).

As alluded to above, courts examine the sufficiency of a search warrant affidavit using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting Solomon, 432 F.3d at 827; edits in Wiley). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

B.   Analysis

On February 19, 2014, Minnesota Bureau of Criminal Apprehension Special Agent Daniel Baumann ("SA Baumann") drafted an affidavit in support of an application for a search

3

warrant for electronically stored data for Defendant's cell phone for the time period of February 9-13, 2014, to be retrieved from Defendant's cell phone provider, Verizon Wireless. (Gov't Ex. 1, at 1). In support of the application for the warrant, SA Baumann detailed his relevant background, training, and experience. (Id. at 2). SA Baumann stated that on the evening of February 11, 2014, the Mahnomen County Sheriff's Department received a medical call for assistance. (Id.) The caller, Arlene Duncan, reported a young child in respiratory distress and reported that the child was unconscious and exhibiting shallow breathing. (Id.) The Mahnomen County Ambulance and Waubun Fire Department responded. (Id.) Responders transported the child to the Mahnomen Health Center prior to flying him to the Sanford Hospital in Fargo, North Dakota, via helicopter. (Id.)

The following day, February 12, 2014, White Earth Indian Child Welfare ("ICW") contacted the White Earth Tribal Police Department concerning the medical emergency, as initial reports indicated that child abuse may be involved. (Id.) That same day, White Earth Tribal Police Investigator John McArthur contacted SA Baumann and requested assistance with conducting an investigation of the alleged child abuse. (Id.)

SA Baumann proceeded to the Sanford Hospital and met with Dr. Arnie Graff, who specializes in child and adolescent abuse. (Id.) Dr. Graff informed SA Baumann that the victim had sustained a large subdural hematoma on the right side of his head, consistent with a "rotational type injury often seen in victims of physical abuse." (Id.) Although Dr. Graff stated that he could not rule out blunt force/impact injury until he obtained an MRI, Dr. Graff believed that the victim's scattered, suspicious bruises were consistent with abuse. (Id.)

SA Baumann conducted a series of interviews with potential witnesses and/or suspects, including the victim's biological mother and the Defendant, Arlene Duncan. (Id.) SA Baumann

4

learned that the victim and his two siblings had recently been removed from their biological mother and placed in foster care. (Id.) At the time of the incident, the children were residing with Arlene Duncan and her husband in Waubun, Minnesota. (Id. at 3). SA Baumann learned that on the day of the medical call, the victim had been in daycare until approximately 2:00 p.m., after which ICW caseworker Nancy Samura picked up the victim to bring him to a supervised visit with his biological mother. (Id.) However, Samura determined that the victim was running a fever and decided to have him examined at the White Earth Health Center. (Id.) The victim's biological mother met the victim and Samura at the Health Center, whereupon a pediatric doctor diagnosed the victim with an ear infection. (Id.) SA Baumann interviewed the pediatric doctor, who was confident that had the victim been suffering from any head injuries at the time of the examination, he would have identified them. (Id.) Accordingly, SA Baumann stated that he believed the victim sustained his head injuries between the time of the examination and 9:24 p.m. – the time at which Arlene Duncan placed her call for medical assistance. (Id.)

SA Baumann learned that both the victim's biological mother and Arlene Duncan had spent unsupervised time with the victim during the timeframe during which it was most likely that the victim sustained his injuries. (Id.) SA Baumann became aware of photographs taken by the victim's biological mother on February 11, 2014 – the date in question – documenting a bruise on the victim's upper forehead. (Id.) Arlene Duncan took custody of the children at approximately 4:45 p.m. on February 11, 2014. (Id.) Duncan, too, informed SA Baumann that she noticed a bruise forming at the victim's hairline upon their arrival at Duncan's residence. (Id.) Duncan informed SA Baumann that she sent a series of text messages – including a photograph of the injury – to the daycare provider, who advised Duncan that she had not observed any bruises while the victim was at daycare. (Id.) Duncan reported to SA Baumann that

5

she suspected the victim's biological mother was responsible for the injuries and informed SA Baumann that she had reported other injuries and bruises to ICW workers on other occasions after the victim had visitations with his mother. (Id.)

SA Baumann learned that Duncan was alone in her home with the children during the evening of February 11, 2014. (Id.) "Duncan provided to Affiant details of her interactions with the children that evening. Duncan did not identify any incident occurred that might have caused injury to [the victim]." (Id.) Duncan reported that she laid the victim down for a nap on the couch; forty-five (45) minutes later, Duncan heard a faint cry from the victim. (Id. at 4). Duncan sat the victim up and noticed he was very pale; his head dropped and he appeared to lose consciousness, prompting Duncan to call 9-1-1. (Id.). In the interim, Duncan provided rescue breathing for the victim. (Id.)

On February 14, 2014, SA Baumann witnessed the Red River Children's Advocacy Center's forensic interviews of the victim's twin eight-year-old sisters. (Id.) During the interviews, the children disclosed several incidents with Duncan that "could be perceived as acts of physical abuse" – including slapping, pinching, and dropping. (Id.) The children also disclosed that Duncan had told the children, "What happens at home, stays at home," which SA Baumann interpreted to mean that the children were told not to disclose information concerning Duncan's methods of discipline. (Id.)

In his affidavit, SA Baumann further stated that, based on his training and experience, telephone communications are accurate sources for determining dates, times, and details concerning crimes and relationships among people. (Id.) SA Baumann identified Duncan's cell phone number and stated that he was aware that Duncan had sent a series of text messages on February 11, 2014, the date of the incident. (Id.) SA Baumann stated, "These text messages and

call detail information may aid in identifying potential witnesses to this and other crimes," and, "may assist in determining [the] state of mind of [the victim's biological mother] prior to and immediately after the reported injuries were sustained by [the victim]." (Id.)

On February 20, 2014, SA Baumann drafted an affidavit in support of a second search warrant for Defendant's physical cell phone itself, to be located on the person of Arlene Jean Duncan and/or at her residence, and for forensic access to any and all electronically stored data contained within the cell phone itself. (Gov't Ex. 3, at 1). The warrant's supporting affidavit is virtually identical to that drafted in support of the February 19, 2014, warrant, save for the inclusion of some additional information concerning Defendant's cell phone, the fact that Defendant nearly always has her phone on her person, and information concerning Defendant's home address. (Id.)

Upon review of SA Baumann's affidavits, the Court finds that the issuing state court judge had a sufficient basis upon which to conclude that probable cause existed for the issuance of the February 19 and 20, 2014, search warrants.

SA Baumann's affidavits in support of each of the search warrant applications articulates a sufficient basis upon which to find that probable cause – i.e., a "fair probability" – existed to conclude that the search would uncover evidence of a crime, and to, accordingly, issue the warrants to search Defendant's cell phone. See Gates, 462 U.S. at 236. See, e.g., United States v. Derden, No. 12-cr-12 (PJS/SER), 2012 WL 1952257 (D. Minn. Apr. 16, 2012) report and recommendation adopted, 12-cr-12 (PJS/SER), 2012 WL 1948765 (D. Minn. May 30, 2012) (finding search warrant for cell phone and phone's contents supported by probable cause when the affidavit described the underlying robbery and subsequent investigation and knowledge of the existence of the cell phone). The affidavits articulate a sufficient basis upon which to

conclude that a crime – child abuse – had indeed taken place, and a sufficient basis upon which to conclude that evidence of that crime may be recovered from Defendant's cell phone. The affidavit contains information concerning Defendant's use of the cell phone on the day of the incident, including a series of text messages regarding and a photograph of the victim's injuries.

Because the Court finds that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the February 19 and 20, 2014, search warrants for the recovery of and contents of Defendant's cell phones, (Gov't Exs. 1, 3), the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 31], be **DENIED** with respect to the two search warrants at issue in the present case.

### III. CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

That Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 31], be **DENIED**.

Dated: October 7, 2014                               s/Leo I. Brisbois
                                                     Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

### N O T I C E

.
Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties **by October 21, 2014** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen (14) days of service thereof and in any event no later than **November 4, 2014**. Written submissions by any party shall

comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.